UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

25-62146-CIV-SINGHAL

PUBLIX SUPER MARKETS, INC., and PUBLIX SUPER MARKETS INC. GROUP HEALTH BENEFIT PLAN,

Plaintiffs,

v.

ABA CARES OF FLORIDA, LLC d/b/a ABA CENTERS OF FLORIDA and ABA CENTERS OF GEORGIA, LLC,

Defendants.
_________________________________ /

**DEFENDANTS, ABA CARES OF FLORIDA, LLC D/B/A/ ABA CENTERS OF FLORIDA AND ABA CENTERS OF GEORGIA, LLC'S, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants, ABA Cares of Florida LLC d/b/a ABA Centers of Florida ("ABAFL") and ABA Centers of Georgia LLC ("ABAGA" and, collectively, "ABA Centers" or "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss Plaintiffs Publix Super Markets, Inc. ("Publix") and Publix Super Markets Inc. Group Health Benefit Plan's ("Plan" and, collectively, "Plaintiffs") Amended Complaint ("AC").[1]

## INTRODUCTION

This case is not about a manufactured fraud – it is about Publix's attempt to avoid paying for medically necessary therapy for children with autism, despite its clear obligations to its Plan members ("Members") and their children ("Children") to provide out-of-network benefits. ABA Centers put children with autism's needs first[2] by eliminating waiting times for crucial applied behavior analysis ("ABA") therapy and ensuring children receive needed care when it is most effective.[3] ABA Centers' mission is rooted in serving children, not in fraud.

Rather than putting the needs of the Children first, Publix has manufactured sweeping allegations of fraud as a pretext to deny or delay payments for life-changing therapy, all while the Children's developmental windows narrow. Despite Plaintiffs' rhetoric, ABA Centers provide necessary, evidence-based care to children with autism. Publix's claims are not grounded in fact

---

[1] The AC asserts claims for: violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I); RICO conspiracy under 18 U.S.C. § 1962(d) (Count II); fraud/fraudulent billing (Count III); negligent misrepresentation and omission (Count IV); unjust enrichment (Count V); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI); equitable and declaratory relief under ERISA § 502(a)(3) and 29 U.S.C. § 1132(a)(3) (Count VII); declaratory judgment (Count VIII); and tortious interference (Count IX). [ECF 9].

[2] Despite Publix refusing to pay for medically necessary ABA therapy since October 2024, ABA Centers have continued to provide such services to Children *without payment* from Plaintiffs for more than one (1) year.

[3] Oftentimes, children with autism must wait between six months to two years to start ABA therapy. In many markets, ABA Centers have eliminated these wait times entirely.

or law; they are a strategic maneuver to sidestep its payment obligations, and shift attention away from its decision to unilaterally stop paying for medically-necessary treatment.[4]

The Court should dismiss the AC for several reasons. ***First***, the RICO, fraud, negligent misrepresentation, unjust enrichment, and FDUTPA claims fail to meet the heightened pleading standard under Rule 9(b). ***Second***, Plaintiffs' RICO claim does not adequately allege the existence of an "enterprise" or Defendants' participation therein. ***Third***, Plaintiffs' RICO conspiracy fails because: (a) the underlying RICO claim cannot survive dismissal and the conspiracy claim adds nothing to the substantive RICO allegations; and (b) the AC lacks any allegations that ABA Centers agreed to the overall objective of the alleged conspiracy. ***Fourth***, Plaintiffs' fraud and negligent misrepresentation claims do not and cannot adequately allege reliance by the Plaintiffs. The fraud and negligent misrepresentation claims also fail because they are based, in part, on omissions, yet Plaintiffs fail to allege that Defendants had a duty to disclose the "omitted information." ***Fifth***, Plaintiffs' unjust enrichment claim fails because: (a) Plaintiffs have an adequate legal remedy; (b) even if pled "in the alternative," the unjust enrichment claim improperly relies on the same facts as the legal claims and is duplicative; and (c) Plaintiffs fail to allege they conferred a direct benefit on ABA Centers. ***Sixth***, Plaintiffs' FDUTPA claim should be dismissed because the AC does not allege damages to the consumer or that Plaintiffs could not have reasonably avoided the injury. ***Seventh***, Plaintiffs' ERISA claim fails because it does not include any allegations regarding the traceability of specific funds. ***Eighth***, Plaintiffs' declaratory relief claim fails because it does not allege an ambiguity, seeks an advisory opinion and is unnecessary as resolution of the other claims will moot the requested declarations. ***Finally***, Plaintiffs' tortious

[4] In fact, prior to providing any ABA therapy, ABA Centers seek and obtain medical necessity pre-approval of the services they intend to provide.

interference claim fails because: (a) a defendant cannot be liable for tortious interference if, like here, the defendant is not a stranger to the business relationship; and (b) the AC fails to provide specifics as to which relationships Defendants purportedly interfered with.

## ARGUMENT

### I. COUNTS I, III, IV, V, AND VI SHOULD BE DISMISSED FOR FAILING TO MEET RULE 9(B)'s HEIGHTENED PLEADING REQUIREMENTS.

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." When, as here, a RICO claim is "based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud," the claim must meet the Rule 9(b) "heightened pleading standard." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Similarly, FDUTPA, unjust enrichment, and negligent misrepresentation claims "that 'sound in fraud' must comply with Rule 9(b)'s particularity requirement." *Pop v. LuliFama, LLC*, 145 F.4th 1285, 1293-94 (11th Cir. 2025). Here, Plaintiffs fail to meet the required Rule 9(b) heightened pleading standard as to these claims. Instead, Plaintiffs rely on sweeping conclusory allegations and impermissibly lump Defendants together.

To satisfy Rule 9(b), Plaintiffs must allege: "(1) precisely what statements were made in what documents or oral representations or what omissions were made[;] (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same[;] (3) the content of such statements and the manner in which they misled the plaintiff[;] and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997); *see also Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020) (dismissing FDUTPA claim for failing to satisfy Rule 9(b)). Further, when a complaint like the one here, "asserts claims against multiple

defendants, it cannot merely 'lump [] together all of the defendants in their allegations of fraud.'"[5] *Cutler v. Voya Fin., Inc.*, 2018 WL 4410202, at *8 (S.D. Fla. Aug. 23, 2018) (alteration in original) (quoting *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)).

Here, Plaintiffs conclusively allege that ABA Centers "employ a common scheme that involves the submission of fraudulent, deceptive and improper information to Plaintiffs and BCBS." (AC, at ¶ 7). The AC fails, however, to include the specifics as to this alleged "fraudulent, deceptive and improper information." Indeed, it is impossible to decipher what the fraudulent, deceptive, improper information is because Plaintiffs fail to include any specific factual allegations in support.[6] Piecing together these various scattered assertions in the AC, it appears Plaintiffs attempt to conclusively allege that ABA Centers billed for services to the Children while purportedly not collecting, and never intending to collect, the applicable co-payments or deductibles, thereby rendering the "billed" amounts somehow false or fraudulent.[7] Yet, Plaintiffs do not allege that ABA Centers have *ever* misrepresented its collections practices to Plaintiffs.[8] Primarily, Plaintiffs appear to allege that ABA Centers omitted information that Plaintiffs believed they needed; but, as discussed below, unless Publix pleads and proves that ABA Centers had a

---

5 Because "the most basic consideration" rooted in Rule 9(b) is fair notice, a fraud claim must provide reasonable notice to the defendants regarding their alleged role in the scheme. *Brooks*, 116 F.3d at 1381. If the claims are not dismissed, Plaintiffs should be required to provide a more definite statement. *See* Fed. R. Civ. P. 12(e).

6 The AC repeatedly sets forth wholly conclusory allegations about an alleged billing scheme without setting forth an example of the precise "fraudulent" billing documentation.

7 The AC does not point to *any* requirement or law restricting the rate or total amount that ABA Centers can charge patients for services. Contrary to Plaintiffs' allegation, the Plan does not pay out of network providers at a "usual and customary rate" nor is there any legal requirement for providers to bill a usual and customary rate. (AC, at ¶ 19).

8 Instead, Plaintiffs allege that ABA Centers represent a certain amount *billed* and that the Plan takes this amount and simply *assumes* it has been collected. *See, e.g.*, (AC, at ¶ 22).

duty to disclose such information, an omission is not actionable.[9] Thus, Plaintiffs' RICO, fraud, negligent misrepresentation, unjust enrichment, and FDUTPA claims should be dismissed.

Additionally, the RICO claim – premised on mail and wire fraud as the alleged racketeering activity (AC, at ¶ 102) – also separately fails to comply with Rule 9(b) because it does not include details addressing each Defendant's specific participation in the fraud. The "allegations must show both (1) an intentional participation in a scheme to defraud another of property or money; and (2) use of mail or wires in furtherance of that scheme" because Plaintiffs allege "predicate acts of mail fraud and wire fraud . . . ." *Myers v. Provident Life & Accident Ins. Co*., 472 F. Supp. 3d 1149, 1177 (M.D. Fla. 2020).

Here, Plaintiffs lump both Defendants together and conclusively allege that "*ABA Centers'* scheme *caused mailings to be made through the United States Postal Service*, in violation of 18 U.S.C. § 1341. The mailings were payments on Plaintiffs' behalf . . . and induced by the knowingly false and fraudulent billed charge submissions by ABA Centers described herein." (AC, at ¶ 102 (emphasis added)). Other than summarily stating that Defendants engaged in "mail fraud" or "wire fraud," Plaintiffs do not allege the specific conduct that constitutes mail or wire fraud or how each *Defendant* used the mail or the wires to further the alleged "scheme." *See generally* (AC, at ¶¶ 96, 98, 108, 112, 114); (AC, at ¶ 102 (alleging mail was used by *Plaintiffs*)).

Moreover, Plaintiffs allege "upon information and belief," that Defendants' control of their

---

[9] Plaintiffs conclusively allege that ABA Centers fraudulently duplicated claims for payment, included inaccurate CPT codes and places of services, and submitted charges for non-existent services, that ABA Centers knew were not covered by the Plan, that were out-of-scope for ABA Centers to provide, and that were not medically necessary. (AC, at ¶ 8). Although nonsensical in many respects, Plaintiffs did not adequately flesh out these allegations in the AC and are largely an attempt to include "everything and the kitchen sink" without any specifics, leaving ABA Centers to guess as to these claims' bases. *See U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (affirming dismissal for failing to meet Rule 9(b) because complaint did not identify any specifics to support its fraud claim).

purported fraudulent claim submissions and billings. (AC, at ¶ 5). Yet, Plaintiffs fail to allege any factual basis for that belief. *See Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012) (dismissing complaint because plaintiff did not plead a "factual basis upon which the information and belief was founded"). Thus, Plaintiffs fail to allege with sufficient particularity that Defendants engaged in either wire or mail fraud. *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief"); *Am. Bancard, LLC v. E. Payment Sols., Inc.*, 2018 WL 3708462, at *5 (S.D. Fla. Aug. 3, 2018) (dismissing wire fraud RICO claim because wires were "not used in furtherance of the scheme" as the "fraud consisted of the misrepresentations Defendants made to the merchants upon entering their premises"). Accordingly, the Court should dismiss the RICO, fraud, negligent misrepresentation, and unjust enrichment claims for failure to comply with Rule 9(b).

## II. EACH OF THE COUNTS SHOULD BE DISMISSED FOR FAILURE TO STATE A PLAUSIBLE CLAIM.

### *A. The RICO Claim Should be Dismissed for Failure to State a Plausible Claim.*

To establish a § 1964(c) RICO violation, Plaintiffs must plead: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity; (5) injury to business or property; and (6) that was by reason of the substantive RICO violation. *Corcel Corp., Inc. v. Ferguson Enters., Inc.*, 551 F. App'x 571, 575 (11th Cir. 2014); Where, as here, a plaintiff alleges the enterprise is an association-in-fact, the alleged enterprise and person must be sufficiently distinct and the defendant must have participated in directing or managing the *enterprise*, not merely acting in its *own* affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1217 (S.D. Fla. 2020) (dismissing RICO claim for failing "to establish that the defendant participated in operating or managing the enterprise itself").

In Count I, Plaintiffs allege ABA Centers are part of an "enterprise" that consists of ABA Centers,

> as well as their non-defendant related corporate affiliates and shared LLC managers and members that ostensibly provide services for individuals with autism spectrum disorder and make submissions to the Plan in order to induce a payment for the benefit of Defendants, are associated-in-fact for the common purpose of carrying on an ongoing unlawful Enterprise.

(AC, at ¶ 89).[10] The RICO claim fails because, among other reasons, Plaintiffs do not sufficiently allege: (1) an enterprise; (2) the role that ABA Centers play in the enterprise; and (3) that ABA Centers operated or managed the alleged enterprise.

Put simply, Plaintiffs have not alleged any facts showing that the purported enterprise is distinct from the RICO "persons" (the ABA Centers). *See Hyundai Motor*, 641 F. Supp. 3d at 1333 ("[I]n a 1962(c) [RICO] case [like the one Plaintiffs seek to allege], a party cannot be both the defendant 'person' and the enterprise."). Plaintiffs' "enterprise" allegations reflect that ABAFL and ABAGA are part of a unified corporate structure. *See* (AC at ¶¶ 91-92) (alleging that ABAFL and ABAGA share a parent company, a registered agent, an attorney in fact, and a principal office address). Plaintiffs' "enterprise" allegations are nothing more than a description of ABA Centers' corporate structure and are insufficient because a corporation can only be a defendant if it conducts racketeering through an enterprise distinct from itself or its subparts. *Cruz v. FXDirectdealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (holding that legally separate corporations that operate within a unified structure and are guided by a single consciousness cannot be both the enterprise *and* the defendant); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) ("[P]laintiffs may

---

10 To meet the "common purpose" requirement, Plaintiffs must allege "not only that there was some commonly shared purpose among [the alleged associates], but also that they associated together for that purpose." *Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, 641 F. Supp. 3d 1321, 1332 (S.D. Fla. 2022). Plaintiffs do not allege such association.

not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees. For our purposes, there is no distinction between the corporate person and the alleged enterprise."). Indeed, the AC simply alleges that Defendants submitted claims for reimbursement—actions that reflect the Defendants' own regular business activities, not the operation of a distinct person. *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1217 (S.D. Fla. 2021) (dismissing RICO claim finding plaintiff failed to plead the existence of an enterprise where the complaint contained no allegations "that the defendants acted together to accomplish a fraudulent purpose, as opposed to acting independently according to the terms of a normal business relationship"). Plaintiffs do not and cannot allege an enterprise separate from ABA Centers; labeling it as an enterprise only amounts to referring to ABA Centers by a different name.

Plaintiffs' RICO claim also fails because, aside from a conclusory allegation that the enterprises' members (most of which are unidentified) share a "common desire and goal" to effectuate "the pattern of racketeering activities described herein," (AC, at ¶ 93), Plaintiffs do not allege that either of the ABA Centers had actual knowledge of, or participated in, any racketeering activity. *See Ray*, 836 F.3d at 1354 (affirming dismissal of RICO claim where plaintiffs failed to allege facts showing that the alleged enterprise members coordinated or participated in the enterprise's affairs); *Drummond*, 454 F. Supp. 3d at 1219 (dismissing RICO claim because "Plaintiffs' Complaint contains no factual allegations to support the conclusion that the . . . Defendants directed or controlled an enterprise"). Further, the RICO claim fails because it does not include any allegations that either ABAFL or ABAGA operated or managed the alleged enterprise. *See United States v. Starrett*, 55 F.3d 1525, 1542 (11th Cir. 1995) (finding the

"operation or management" test established in *Reves*, 507 U.S. 170, requires a plaintiff to adequately allege that the defendant had "some part in directing th[e enterprise's] affairs").

Similarly, Plaintiffs fail to allege any facts demonstrating an agreement between the ABA Centers to engage in the alleged illegal scheme. *See Am. Dental Ass'n*, 605 F.3d at 1293 (affirming dismissal of RICO claim predicated on mail and wire fraud because the complaint contained "no allegations as to how Defendants agreed to engage in an illegal scheme to defraud" plaintiffs). Instead of alleging "a meeting of the minds," Plaintiffs merely allege parallel conduct by each entity, which is insufficient to support a plausible inference of an agreement. *See* (AC, at ¶ 5 ("each of the ABA Centers controls all material aspects of its . . . claims submissions and billing"); ¶ 7 ("[t]he ABA Centers employ[] a common scheme"); ¶¶ 7-25 (describing the conduct of each entity without tying them together sufficiently)). Such allegations do not plausibly allege a RICO "association in fact" enterprise. (AC, at ¶ 104); *Am. Dental.*, 605 F.3d at 1294 ("allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy"). Accordingly, Count I must be dismissed.

*B. The RICO Conspiracy Claim Should be Dismissed for Failure to State a Plausible Claim.*

"A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1230 (S.D. Fla. 2011). Generally, "where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails." *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007); *see also Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (affirming dismissal of RICO conspiracy claim because it only alleged that "defendants 'conspired and confederated' to commit conduct which in itself does not constitute a

RICO violation"). Additionally, under Rule 8, conclusory allegations without factual support are insufficient.

Even if the RICO conspiracy claim contained additional facts beyond the RICO allegations (which it does not), Count II would still fail because it lacks allegations showing that ABA Centers agreed to the conspiracy's objective. In considering a motion to dismiss, the Court should disregard allegations that are merely conclusions of law or conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court then should consider the remaining factual allegations to determine if they plausibly suggest entitlement to relief. *Id.* at 681. Applying this standard, the *only* arguably non-conclusory allegation appears in paragraph 112,[11] which states that each Defendant knew of the enterprise and through "some connections and coordination" knew "that the other Defendant was engaged in a conspiracy." (AC, at ¶ 112). This vague allegation does not identify any meeting of the minds or agreement, but, at best, describes parallel conduct. *See Am. Dental*, 605 F.3d at 1294 ("allegations of parallel conduct accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy"); *Gov't Emps. Ins. Co. v. Glassco, Inc.*, 2021 WL 3930508, at *7 (M.D. Fla. Sep. 2, 2021) ("The Court could speculate based on the above litany of conclusory . . . allegations, but that is not its job. Nor does [plaintiff] allege facts showing that [defendant] agreed to commit two predicate acts. These allegations fail to state a plausible claim for relief for a RICO conspiracy . . . ."). Thus, Count II should be dismissed.

### *C. The Fraud and Negligent Misrepresentation/Omission Claims Should Be Dismissed for Failing to Allege Reliance and a Duty to Disclose.*

The AC also includes a fraud claim and, in the alternative, a claim for negligent

---

[11] Paragraphs 111 through 115 of the AC conclusively attempt to establish the existence of such agreement, but such attempt fails. *See* (AC, at ¶ 111 (conclusively alleging ABA Centers "agreed together to violate" RICO without any supporting facts); ¶¶ 113-15 (reciting conclusory allegations)).

misrepresentation/omission. These claims are virtually identical – except for the substitution of the word "negligently" for "knowingly" in Count IV. *Compare* (AC, at ¶¶ 120-30); *with* (AC, at ¶¶ 131-42).

However, fraudulent misrepresentation and negligent misrepresentation have different elements of proof. To establish fraud in Florida, a party must allege: (a) a false statement about a material fact; (b) known to be false by the defendant; (c) an intent for the statement to induce another to act; and (d) resulting damages by the party acting in reliance on the statement. *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). A negligent misrepresentation claim requires: (1) misrepresentation of a material fact; (2) the defendant knew or should have known of the statement's falsity; (3) intent to induce reliance; and (4) injury from justifiable reliance. *Pop v. LuliFama.com, LLC*, 2024 WL 1194485, at *8 (M.D. Fla. Mar. 20, 2024). Both claims require specific allegations that "but for the alleged misrepresentation or nondisclosure, the [plaintiff] would not have entered the transaction." *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999).

Here, both claims fail because Plaintiffs do not, and cannot, adequately allege either relied on any purported misrepresentation or omission made by ABA Centers. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1193 (11th Cir. 2025) ("Pleading a misrepresentation alone is not enough to show fraud. Reliance is required, too."). The AC confirms that Blue Cross Blue Shield ("BCBS")—not either Plaintiff—administers the Plan and processes and pays ABA Centers' claims (AC, at ¶¶ 45, 54, 124, 136).[12] Because neither Plaintiff relied on any purported

[12] Plaintiffs fail to allege justifiable reliance, the fourth element of the claim. *See* (AC, at ¶¶ 131-42). Instead, the claims allege only that they "reasonably relied on these misrepresentations." (AC, at ¶¶ 127, 139). This allegation, however, is insufficient. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) ("A bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)."). Even if

misrepresentation or omission made by ABA Centers to pay ABA Centers, the fraud and negligent misrepresentation claims should be dismissed with prejudice. *See Dolch v. Linen Source Inc.*, 2008 WL 11336301, at *1 (M.D. Fla. Jan. 3, 2008) (In a fraud claim, "a plaintiff must show 'actual reliance on the representation or omission at issue.'").

Separately, both claims are grounded on a purported omission, *i.e.,* that ABA Centers allegedly failed to disclose that it did not collect co-payments or deductibles from Members. (AC, at ¶¶ 129 (fraud); ¶ 141 (negligent omission)). To sustain either omission claim, Plaintiffs must allege that Defendants owed them a fiduciary or fiduciary-like duty to disclose such information. *Pop*, 2024 WL 1194485, at *8 (finding that under Florida law, negligent misrepresentation based on omissions requires a fiduciary duty to disclose); *Armor Corr. Health Servs., Inc. v. Teal*, 2021 WL 5834245, at *25 (S.D. Fla. Dec. 8, 2021) (finding that under Florida law, omissions are only actionable as fraud if there is a duty to disclose); *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003) (affirming dismissal of fraud by concealment claim due to lack of allegations of a fiduciary duty triggering a duty to disclose).

Absent an express agreement, the existence of a fiduciary relationship depends on the specific facts and circumstances of the parties and the transaction. *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003). A fiduciary relationship arises from confidence and trust by one party and an undertaking by the other to advise, counsel, and protect. *Id*. By contrast, when parties deal at arm's length—as is the case here between an out-of-network healthcare provider and a plan sponsor/administrator—no fiduciary relationship exists

---

Plaintiffs alleged justifiable reliance, the supporting allegations are conclusory, formulaic and insufficient to plausibly state such reliance. *See Zarrella v. Pacific Life Ins. Co.*, 809 F. Supp. 2d 1357, 1369 (S.D. Fla. 2011) (finding complaint alleging that "Plaintiffs justifiably relied upon the misrepresentations and omissions" insufficient; Plaintiffs must provide factual grounds for relief, not merely labels, conclusions, or formulaic recitations).

and no duty to disclose arises. *Taylor*, 850 So. 2d at 541 (when parties deal at arm's length, "a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other"); *Mawardi v. Cohen*, 381 So. 3d 1, 3 (Fla. 4th DCA 2023) (finding no fiduciary duty when parties deal at arm's length).[13] Here, as out of network providers, Defendants have no contractual obligation to abide by the Plan's terms. Because neither claim alleges the existence of a contractual or fiduciary duty requiring Defendants to disclose their collection practices, Plaintiffs' omission-based claims fail as a matter of law and both Counts III and IV should be dismissed.

*D. The Unjust Enrichment Claim Should be Dismissed for Failure to State a Plausible Claim.*

In Florida, to state an unjust enrichment claim, a plaintiff must allege that: (a) plaintiff conferred a benefit on defendant; (b) defendant appreciated the benefit; and (c) defendant accepted and retained the benefit under circumstances that make it inequitable for him to retain it without paying for it. *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022). Unjust enrichment is an equitable remedy that is unavailable when there is an appropriate legal remedy. *Bule v. Garda CL Se., Inc.*, 2014 WL 3501546, at *3 (S.D. Fla. July 14, 2014) (dismissing unjust enrichment claim when "an adequate remedy not only exists, but has been specifically pled as

---

[13] Paragraph 133 asserts that each billing statement ABA Centers submit constitutes a representation "that the information shown . . . is true, accurate, and complete, and that the submitted billing information does not . . . conceal material facts." (AC, at ¶ 133). This allegation alone is insufficient to allege a duty. Courts have generally held there is no fiduciary relationship between an insured and insurer. *Cf. Allen v. First Unum Life Ins. Co.*, 2020 WL 6203454, at *6 (M.D. Fla. Oct. 22, 2020) (noting that "[a] payment, series of payments, or a business relationship is not enough to create the trust and reliance necessary to form a fiduciary duty" in case involving insurer and insured relationship); *Traditions Senior Mgmt., Inc. v. United Health Adm'rs, Inc.*, 2013 WL 3285419, at *3, (M.D. Fla. June 27, 2013) (holding that a client paying money to a company is insufficient, by itself, to establish a fiduciary duty, as it is "no different than any ordinary business transaction and does not give rise to a heightened expectation of trust"). At best, Plaintiffs and ABA Centers stand at arm's length.

basis in the action").

While an unjust enrichment claim may be plead in the alternative, where it relies on the same factual predicate as a tort based claim, an unjust enrichment claim should be dismissed. *Licul v. Volkswagen Grp. of Am.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013) (dismissing claim when "Plaintiffs make no effort to distinguish the 'misconduct' and 'unfair and deceptive conduct' supporting their unjust enrichment claim from the alleged wrongdoing underlying their FDUTPA claim"); *see also Swipe for Life, LLC v. XM Labs, LLC*, 2011 WL 13220765, at *5 (S.D. Fla. Aug. 19, 2011) ("Since Swipe seeks to recover for wrongful conduct that arises in tort, its recovery, if any, lies in tort, and a claim for unjust enrichment is not available . . . .").

Here, Plaintiffs' unjust enrichment claim is entirely duplicative of their fraud, negligent misrepresentation, FDUTPA, and RICO claims. Plaintiffs do not allege any independent facts to support a claim for unjust enrichment beyond the same alleged "fraudulent scheme" underlying their other claims. *State v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (dismissing unjust enrichment claim because "[t]he law of unjust enrichment is concerned solely with enrichments that are unjust independently of [alleged] wrongs").

The unjust enrichment claim must also be dismissed because Plaintiffs fail to allege that they conferred a *direct* benefit on Defendants—the first element of the claim. *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) ("The plaintiffs must show they directly conferred a benefit on the defendants."). The alleged scheme described in the AC highlights that Plaintiffs did not *directly* confer any benefit on ABA Centers; any monies received by ABA Centers comes directly from Members, *not* Plaintiffs. *See* (AC, at ¶ 16 ("the Plan will not make payment directly to the ABA Centers, . . . the Plan will only make payment directly to the Plan Member")). Thus, Count V should be dismissed with prejudice. *Gov't Emps. Ins. v. Cereceda*,

2020 WL 13220422, at *6 (S.D. Fla. Mar. 13, 2020) (dismissing unjust enrichment claim because at best defendant conferred an indirect benefit on plaintiff); *see also Chiquita Fresh N. Am., L.L.C. v. Port Everglades Terminal, LLC*, 372 So. 3d 277, 280 (Fla. 4th DCA 2023) ("It is well-established that to support an unjust enrichment claim, a plaintiff must have *directly* conferred a benefit on the defendant.").

*E. The FDUTPA Claim Should be Dismissed for Failure to State a Plausible Claim.*

To state a FDUTPA claim, a plaintiff must allege: (a) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Pop*, 145 F.4th at 1293. A plaintiff must also allege damages to a consumer, which could not have reasonably avoided the injury. *See CMR Constr. & Roofing, LLC v. UCMS, LLC*, 2022 WL 3012298, at *3 (11th Cir. July 29, 2022) ("to satisfy the first element for a claim . . . under FDUTPA—i.e., a deceptive act or unfair practice—the plaintiff must allege that the relevant act or practice was harmful to a consumer"); *Porsche Cars N. Am. v. Diamond*, 140 So. 3d 1090, 1098 (Fla. 3d DCA 2014); *see also Medmoun v. Home Depot U.S.A., Inc.*, 2022 WL 1443919, at *4 (M.D. Fla. May 7, 2022) (finding that an unfair trade practice under FDUTPA is one that causes substantial, unavoidable *consumer* injury not outweighed by benefits to consumers or competition). The AC fails to include any allegations that Members or the Children, the consumers,[14] were harmed or that Plaintiffs could not have reasonably avoided the injury or took any measures to that end. These omissions are fatal to the FDUTPA claim.[15] *CMR*, 2022 WL 3012298, at *3; *Porsche Cars*, 140 So. 3d at 1098.

---

14 Here the Children or their Member parents are the consumers because Plaintiffs allege they were the ones who engaged in the purchase of the relevant services, *i.e.,* the purchase of ABA therapy. *See, e.g.*, (AC, at ¶ 3); *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) ("A 'consumer' is one who has engaged in the purchase of goods or services.").

15 The Court should additionally find Plaintiffs lack standing to bring their FDUTPA claim because they are not the consumers. *See CMR*, 2022 WL 3012298, at *3 n.2 (recognizing that courts in this district have interpreted the standing of non-consumers inconsistently and that the Florida Supreme Court has not yet opined on the issue).

*F. The ERISA Claim Should be Dismissed for Failure to State a Plausible Claim.*

In their ERISA claim, Plaintiffs seek injunctive relief, disgorgement, restitution in equity, and an order enjoining ABA Centers "from any improper billing practices," and "from transferring or dissipating funds paid by Publix on behalf of the Plan." (AC, at ¶ 176). The claim fails as a matter of law because the relief sought is not the typical equitable relief permitted by ERISA.

Under § 502(a)(3) of ERISA, a plan fiduciary, as Plaintiffs are, may only bring an action for equitable relief. *See* 29 U.S.C. § 1132(a)(3); *see also Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 931 (11th Cir. 2021). The Supreme Court has clarified that this section authorizes "those categories of relief that were *typically* available in equity."[16] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256-57 (1993). The Court additionally cautioned that, even when an ERISA plaintiff frames the relief as equitable, courts must look past the label: the determination of whether a particular remedy "is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Knudson*, 534 U.S.at 213. Claims for restitution are not always grounded in equity. Indeed, restitution is legal or equitable depending on a plaintiff's claim and the nature of the remedies sought. *Id.*

Further, "*Knudson* established that when making a claim for equitable restitution under ERISA § 502(a) (3), a fiduciary must establish that it is seeking return of specifically identifiable funds (or proceeds thereof) that are within the defendant's possession and control that rightfully belong to the plan." *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408, at *6 (D. Md. July 15, 2015) (citing *Knudson*). *Compare Popowski v. Parrott*, 467 F.3d 1367, 1373 (11th Cir. 2006) (relying on *Knudson* to find that the fiduciary sought "appropriate

[16] *Great-West Life & Annuity Ins. Co. v. Knudson* rejected a reading of ERISA "that would extend the relief obtainable under § 502(a)(3) to whatever relief a court of equity is empowered to provide in the particular case at issue (which could include legal remedies that would otherwise be beyond the scope of the equity court's authority)." 534 U.S. 204, 209–10 (2002).

equitable relief" where the plan's subrogation and reimbursement provisions created a lien on amounts that a covered person recovered from a third party); *with Conn. Gen. Life*, 2015 WL 4394408, at *6 (dismissing ERISA claim because claim for restitution did not constitute "appropriate equitable relief" when the plaintiff fiduciary did not plausibly allege that its overpayments were currently in the provider's possession or specifically identifiable).

Plaintiffs' claims for "restitution in equity" and to enjoin "ABA Centers from transferring or dissipating funds paid by Publix on behalf of the Plan," (AC, at ¶ 176), are, in substance, improper claims for restitution at law because they seek to hold Defendants liable for a sum of money, rather than to recover specifically identifiable funds in Defendants' possession. Plaintiffs do not (and cannot) allege payments of specific funds or property traceable to Defendants, or that the alleged overpayments are within Defendants' possession. This is because Plaintiffs admit that payments were made directly to Members. *See, e.g.*, (AC, at ¶ 16 ("the Plan will not make payment directly to the ABA Centers, . . . the Plan will only make payment directly to the Plan Member")). In substance, Plaintiffs seek to hold Defendants liable for an alleged overpayment. This is the exact type of legal restitution barred by the case law. Plaintiffs' restitution claim does not seek "appropriate equitable relief," and the Court should dismiss Count VII, with prejudice.

*G. The Declaratory Judgment Claim Should be Dismissed for Failure to State a Plausible Claim.*

Count VIII merely repackages the AC's numerous legal claims as a declaratory judgment action, asking the Court to declare that: (a) the false and fraudulent charges submitted by ABA Centers do not "result in any payment obligations by Plaintiff"; and (b) Plaintiffs are entitled to recoup overpayments from ABA Centers due to ABA Centers' alleged false and fraudulent billing. (AC, at ¶ 189). These requests are improper for two independent reasons.

First, the declaratory judgment claim fails because Plaintiffs fail to plead the existence of

an ambiguity. *See Hillcrest E. No. 27, Inc. v. Lexington Ins. Co.*, 2022 WL 19266364, at *3 (S.D. Fla. Feb. 9, 2022) ("[U]nder the Federal Declaratory Judgment Act, a party must plead that a contractual term or provision is ambiguous and needs construction. Failure to plead ambiguity requires dismissal of a declaratory relief claim."). Second, Plaintiffs' declaration request seeks, at least in part, an impermissible advisory opinion. A plaintiff seeking declaratory relief must allege a live, actual controversy—not a hypothetical or abstract dispute. *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012). If a complaint seeks an answer to an abstract question "based upon the possibility of a factual situation that may never develop," there is not a live controversy, and a declaratory judgment claim should be dismissed. *Hendrix v. Poonai*, 662 F.2d 719, 722 (11th Cir. 1981). Here, paragraph 189(a) of the AC asks the Court to declare in advance what portions of ABA Centers' charges Plaintiffs must pay, even outside the allegedly fraudulent charges. This request does not involve a concrete dispute; rather, it seeks guidance on hypothetical billing questions that may arise in the future. Such an advisory opinion is outside the Court's constitutional authority and should be dismissed.

Third, even assuming an actual controversy exists, the Court should exercise its discretion to decline jurisdiction over this declaratory judgment claim. *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) (finding that the Declaratory Judgment Act grants federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants"). Courts generally dismiss declaratory judgment claims that are redundant or fail to serve an independent useful purpose. *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC,* 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011). Here, resolution of Plaintiffs' substantive claims—whether for fraud, negligent misrepresentation, unjust enrichment, FDUTPA, or ERISA—will necessarily resolve the very questions Plaintiffs ask the Court to declare on: whether Plaintiffs owe ABA Centers payment for

billed charges and whether they may recover any alleged overpayments. Once these legal claims are adjudicated, there will be no unresolved legal issue that requires declaratory relief. *Organo Gold Int'l, Inc. v. Aussie Rules Marine Serves., Ltd.*, 416 F. Supp. 3d 1369, 1376 (S.D. Fla 2019) ("Where, as here, the declaratory judgment count[s] . . . serve no useful purpose because the issues will be resolved by another claim [or affirmative defenses], courts generally decline to entertain the declaratory judgment count[s]."); *Sec. Nat'l Ins. Co. v. Hendrik Uiterwyk, P.A.*, 725 F. Supp. 3d 1308, 1323 (M.D. Fla. 2024) (finding that courts often decline redundant declaratory judgment claims). Because Count VIII fails to allege an ambiguity, seeks an impermissible advisory opinion, and, in any event, is entirely duplicative of Plaintiffs' other claims, the Court should exercise its discretion and dismiss Count VIII with prejudice.

*H. The Tortious Interference Claim Should be Dismissed for Failure to State a Plausible Claim.*

To allege tortious interference with a contract, a plaintiff must plead: (1) a business relationship conferring legal rights on the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional and unjustified interference causing nonperformance; and (4) resulting damages. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

Under Florida law, a defendant who is not a stranger to the business relationship cannot be liable for tortious interference. *See Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.,* 13 So. 3d 1090, 1095 (Fla. 4th DCA 2009) (reversing judgment on tortious interference claim where defendant has "a potential financial interest in how a contract is performed"); *Barco Holdings, LLC v. Terminal Inv. Corp.*, 967 So. 2d 281, 293 (Fla. 3d DCA 2007).

ABA Centers are not strangers to the relationship between Plaintiffs and Members. The AC itself alleges that ABA Centers provide ABA therapy services to Children and submits claims for reimbursement to Plaintiffs. *See, e.g.,* (AC, at ¶¶ 24, 28, 29, 32). Thus, ABA Centers have an

economic interest in the relationship between Plaintiffs and Members. Thus, they cannot be liable for tortious interference as a matter of law. *See Palm Beach Cnty.*, 13 So. 3d at 1095.

In addition, for a tortious interference claim, a complaint must also plead more than a relationship with the public at large. *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1048-49 (Fla. 4th DCA 2009); *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc,* 2022 WL 3155035, at *13-14 (S.D. Fla. July 21, 2022) (dismissing tortious interference claim for failing to "mention the significance of specific buyers or Medicare beneficiaries."). "[A] claim of tortious interference with a business relationship requires proof that the plaintiff had a business relationship with 'identifiable customers.'" *Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 526 (Fla. 1st DCA 1997). Plaintiffs simply allege a "contractual relationship with Plan Members" generally without providing any details about the specific individuals, contracts, or transactions allegedly interfered with. (AC, at ¶¶ 192, 194, 195). These conclusory allegations are insufficient to state a plausible claim. *See Ethan Allen*, 647 So. 2d at 815 (dismissing tortious interference count claiming interference with all its customers); *MSP Recovery Claims*, 2022 WL 3155035, at *13 (dismissing tortious interference claim when complaint failed to allege "specific examples of business interference with individual Medicare beneficiaries"); *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, 722 F. Supp. 3d 1296, 1321 (S.D. Fla. 2024) (finding plaintiffs failed to plausibly allege tortious interference). Accordingly, Count IX should be dismissed.

## CONCLUSION

For the foregoing reasons, ABA Centers respectfully request that the Court enter an order dismissing the Amended Complaint, awarding ABA Centers' their attorneys' fees and costs incurred in connection with this Motion, and granting ABA Centers any other and further relief as the Court deems just and proper.

**RULE 7.1(a)(2) CERTIFICATE OF CONFERRAL**

While not required to confer under Local Rule 7.1(a)(2), on November 4, 2025, Defendants' counsel attempted to confer via e-mail with Plaintiffs' counsel in good faith to resolve by agreement the issues raised in the motion instant Motion. To date Plaintiffs' counsel has not responded to Defendants' conferral correspondence or provided Plaintiffs' position regarding the relief requested herein.

Dated: November 5, 2025.

Respectfully Submitted,

GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0535

By: */s/ A. Sheila Oretsky*
A. Sheila Oretsky, Esq. (FBN 31365)
Angela F. Benjamin, Esq. (FBN 15914)
Jennifer M. Faggion (FBN 46326)
Sandra Ramirez Loe, Esq. (FBN 1010385)
Sheila.Oretsky@gtlaw.com
Angela.Benjamin@gtlaw.com
Jennifer.Faggion@gtlaw.com
Sandra.Loe@gtlaw.com
Raquel.Acuna@gtlaw.com
MIAlitdock@gtlaw.com

*Attorneys for Defendants ABA Cares of Florida, LLC d/b/a ABA Centers of Florida and ABA Centers of Georgia, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served through the Court's CM/ECF system on November 5, 2025, which will send an electronic copy to all counsel of record on the Service List below.

Anne Marie Estevez, Esq.
Clay Matthew Carlton, Esq.
Email:annemarie.estevez@morganlewis.com
Email: clay.carlton@morganlewis.com
Morgan Lewis & Bockius
200 S Biscayne Boulevard
Suite 5300 Wachovia Financial Center
Miami, FL 33131-2339
Telephone: 305-415-3330
Facsimile: 305-415-3001

Brian W. Shaffer, Esq.
Email: brian.shaffer@morganlewis.com
Morgan, Lewis & Bockius, LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: 215-963-5000
Facsimile: 215-963-5400

Kelly A. Moore, Esq.
Email: kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
Suite 40th Fl
New York, NY 10178
Telephone: 212-309-6000
Facsimile: 212-558-7100

*Attorneys for Plaintiffs, Publix Supermarkets, Inc. and Publix Super Markets, Inc. Group Health Benefit Plan*

By: */s/ A. Sheila Oretsky*
A. Sheila Oretsky, Esq.